THE TOTTEN & HOGG IRON AND STEEL FOUNDRY COM-
PANY, INTERVENER, ETC., *v.* THE MUNCIE
NAIL COMPANY ET AL.

[No. 18,301.    Filed September 24, 1897.]

MECHANIC'S LIEN.—*Appointment of Receiver for Property.—Sale of
Property.*—A mechanic's lien is not affected by the appointment of
a receiver for the property; and upon the sale of the property by the
receiver the lien attaches to the proceeds of the sale.    p. 374.

SAME.—*Machinery.—Statute Construed.*—Under the provision of sec-
tion 7255, Burns' R. S. 1894, a lien may be acquired on an engine
and machinery by one furnishing repairs therefor, notwithstanding
such repairs were not attached to the machinery at once, but set
upon blocks near by, to be ready when the old parts could be no
longer used.    pp. 374-376.

From the Delaware Circuit Court. *Reversed.*

*J. N. Templer, C. C. Ball* and *E. R. Templer,*
for appellant.

*J. W. Ryan* and *W. A. Thompson,* for appellees.

HOWARD, J.—The original action in this case was
by a stockholder of the appellee company, showing
an indebtedness of the company to an amount in ex-
cess of $100,000.00, the bringing of attachment and
garnishment proceedings by creditors, etc., and ask-
ing that the company be adjudged insolvent and a re-
ceiver be appointed to close up its affairs. This was
accordingly done, and the receiver sold all the prop-
erty of the company for $22,600.00.

Totten & Hogg Iron, etc., Co., v. Muncie Nail Co., et al.

Among the claims allowed against appellee was one in favor of appellant. After the allowance of its claim appellant filed a petition as intervener, asking that the claim be declared a preferred lien upon the funds in the hands of the receiver so derived from the sale of appellee's property.

From the intervening petition it appears that the appellant company "contracted with the said The Muncie Nail Company to manufacture, finish, and furnish for use in and to become a part of the nail mill and rolling mill thereof at Muncie　*　*　*　*　one 26 x 48 cast cylinder, weighing 4,450 pounds,　*　.*　* and the same was then and there manufactured, finished, and furnished for use in said nail mill and rolling mill by your petitioner, and was actually used therein by the said The Muncie Nail Company."

Notice of intention to hold a mechanic's lien for the value of the machinery so furnished was duly given.

The evidence, which is without dispute, shows that appellant, doing business at Pittsburgh, had furnished engines and other machinery for use in appellee's mill; that in April, 1893, the cylinder of appellee's large engine was out of repair, and that it was to replace this old one that the cylinder here in question was furnished.

The contract was made by telegrams and letters. Appellee's first telegram was: "Have you a duplicate cylinder, twenty-six by forty-eight, same as our big engine? Answer quick." The answer was: "Have nothing in stock but can make one." Another telegram sent on the same day by the president of the appellee company, then away from home, reads: "Cylinder large engine cracked; how soon can you duplicate it?" The answer to this was: "Cannot tell, about thirty days; pattern has been changed. Will do our best; must have old cylinder." A reply from the presi-

dent sent on the same day said: "Get everything ready to make cylinder. Will give instructions when I reach home. Must work day and night to finish it." Other correspondence followed, and the cylinder was completed and sent to Muncie. Meanwhile the old cylinder was temporarily repaired and continued to be used in the engine; and when the new cylinder arrived it was set on blocks within a few feet of the engine, but was not then placed therein. The court found the evidence insufficient to show that the appellant was entitled to have its claim declared a preferred lien upon the funds in the hands of the receiver.

If appellant had acquired a lien upon the mill and other property of appellee, such lien could not be lost by the subsequent appointment of the receiver (*J. W. Dann Mfg. Co.* v. *Parkhurst*, 125 Ind. 317, and authorities there cited; 15 Am. & Eng. Enc. Law, 112); and on the sale of the property by the receiver the lien would attach to the proceeds. As said in the last authority cited: "The money derived from the sale of property upon which there is a mechanic's lien will be treated by a court of equity, as it would treat the property before a sale; and such court will follow it into the hands of the party who has converted the property into money."

It is agreed that whether a mechanic's lien had been acquired in this case must depend upon the provisions of section 7255, Burns' R. S. 1894 (Acts 1889, p. 257), which declares: "That contractors, * * * and all persons performing labor or furnishing material or machinery for erecting, altering, repairing or removing any house, mill, manufactory * * * or other structure, may have a lien separately or jointly upon the house, mill, manufactory * * * or other structure which they may have erected, altered, repaired

or removed, or for which they may have furnished material or machinery of any description and on the interests of the owner of the lot or land on which it stands, or with which it is connected, to the extent of the value of any labor done, or material or machinery furnished, or both."

That the machinery in this case, the cylinder for the stationary engine in appellee's mill, was furnished by appellant at appellee's special instance and request, was fully alleged and proved, as appears from the record; and it is not easy to see why the lien given by the statute was not acquired by appellant. But it is said, that although appellee made a special order for the machinery, and appellant furnished the same according to the specifications, yet it turned out that appellee's old cylinder was sufficiently repaired to run in the works for the time being, so that the new cylinder was not put into the engine but was set on blocks near by to be ready as soon as the old cylinder could no longer be used; and, therefore, that the new cylinder, not being actually attached to and placed in the engine, was no part of the structure, and hence not subject to the statutory lien. This seems to us to wholly mistake the spirit, if not the letter of the law. Appellant had done all required by the statute to entitle it to the lien; that is, furnished the machinery for use in appellee's mill; it was for appellee to go on and complete the work by setting up and using the machinery so furnished. If appellant had done its part, any right thus acquired could not be defeated by a failure to act on the part of appellee.

In *Scott* v. *Goldinhorst*, 123 Ind. 268, it was contended that a mechanic's lien was not authorized, for the reason, apparently, that the owner had abandoned the construction of his building after laying the foundations. Judge Mitchell there said: "We are not im-

pressed with this view of the subject. * * * Laborers and material men, who are employed to do work, or furnish material, with the purpose of the employer, then formed, to continue the work of the completion of a building for which the foundation is thus being prepared, are entitled to acquire a lien under the statute. * * * If the work be done or materials furnished for the use or purpose designated in the statute, the right to acquire a lien is complete, and the law is not so unjust as to defeat the right to the lien, because the owner may for any reason fail to complete the work."

Cases which hold that material men who furnish material to a contractor will not be given a mechanic's lien without showing that such material was actually used in the building upon which the lien is sought, are not in point. Here the machinery was furnished to the owner in good faith for use in its own building, and such owner may not, as against such good faith performance, plead a failure on its own part to use the material so ordered and furnished.

It turned out that the old cylinder could be used longer than was anticipated at the time it was first found cracked and the new one ordered in its place. This, however, could not affect the rights of those who furnished the new cylinder as so ordered. Moreover, the cylinder was accepted at the mill and was afterwards sold by the receiver with the rest of the mill property being part of the item, "one large engine and machinery." In effect, it had become a part and parcel of the machinery of appellee's mill. Appellant, as we think, had acquired a lien upon the mill property, and this lien was in equity transferred to the fund in the hands of the receiver.

Judgment reversed with instructions to grant a new trial.